COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Malveaux, Causey and Chaney
Argued by videoconference


BRIAN D. BAILEY

                                                    MEMORANDUM OPINION* BY
v.          Record No. 0589-21-4                JUDGE DORIS HENDERSON CAUSEY
                                                         JULY 19, 2022
AMY K. SARINA


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James P. Fisher, Judge

Jennifer M. Guida (Westlake Legal Group, on brief), for appellant.

Elena Zarabozo (Jason Yan; O'Melveny & Myers LLP, on brief), for
appellee.

(Robert M. Vernail; The Law Office of Robert Vernail, on brief),
Guardian *ad litem* for the minor child.


Brian D. Bailey ("father") and Amy K. Sarina ("mother") are the biological parents

("parents") to D.B., a minor child and the subject of this dispute.  Father appeals from two orders

of the Circuit Court of Loudoun County ("circuit court"):  (1) an order granting sole legal

custody and primary physical custody of D.B. to mother and (2) an order for father to pay all the

guardian *ad litem* ("GAL") fees associated with this matter.  Father contends that the circuit

court erred in:  (1) "prohibiting [D.B.] from testifying and then in its ruling stated[,] 'there was

insufficient evidence to determine [D.B.'s] preference'"; (2) "failing to determine the minor's

competency to testify and failed to consider the preference of [D.B.], pursuant to Va. Code

§ 20-124.3"; (3) "not considering the GAL report, position, and recommendation in making its

ruling"; (4) "ordering [father] to pay all of the GAL costs and fees, without a hearing or

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

presentation of evidence"; (5) "not allowing [father] to put on his complete case and allowed [mother] to put forth evidence for 1.5 days of the 2 days of trial"; (6) "prohibiting [father]'s expert witness[,] Dr. Hoffmann[,] from testifying in Court and requiring [father] to proffer the testimony"; (7) "using and considering evidence from [D.B.]'s testimony at the rule to show cause hearing [during] the modification hearing"; (8) "permit[ting Dr.] Behrmann to address and opine on parental alienation against [father] when (a) Behrmann did not meet with [father]; (b) in Behrmann's report he made a determination that there was no parental alienation by [father] and testified contrary to his written report; (c) [mother] did not disclose parental alienation as a topic in which Behrmann would testify to in her late discovery response regarding experts"; (9) "considering the January 24, 2020[,] [t]ranscript . . . in making its [r]uling . . . when neither the [t]ranscript nor any other evidence of the January 24, 2020 hearing, was moved into evidence or taken at the [trial]"; (10) "considering its contempt order against [father] when the [c]ourt vacated the finding of contempt"; (11) "giving weight to Behrmann's testimony when Behrmann admittedly was not legally permitted to practice in the Commonwealth of Virginia for a period of five months (approximately July 2020 to November 2020) and admittedly treated/met with [mother] and [D.B.] during that timeframe in Virginia"; (12) "giving no weight to Behrmann's testimony that contradicted his written report"; (13) "giving no weight to Dr. Ling's . . . testimony regarding [mother]'s inability to make decisions for [D.B.]; and that [mother]'s internal conflicts had negative effects on relationships with individuals, including [D.B.] and [father]"; (14) "finding that 'father's actions have been contrived with a goal of "winning" a fight against the mother rather than serving the interests of [D.B.]'"; (15) "not considering all evidence and testimony before the [c]ourt when determining custody and visitation, pursuant to [Code] §20-124.3"; (16) "not giving weight to the uncontroverted evidence that [mother] manipulated [D.B.] to file a false affidavit for a protective order and initiated criminal charge[s]

against [father]'s wife for false allegations of abuse when determining custody and visitation, when these allegations were [mother]'s original basis for modification"; (17) "awarding sole legal and primary physical custody to [mother] and granting [father] minimal weekend visits with [D.B.] as neither party nor the [GAL] requested same"; (18) "denying [father]'s Motion to Quash Behrmann as an Expert Witness"; and (19) "removing [father]'s Joint Motion to Clarify May 6, 2021 Opinion Order and Motion to Stay from the docket and never [making] a ruling relative to Winter Break and Summer Vacation."

For the reasons below, we affirm the judgment of the circuit court.[1]

BACKGROUND[2]

"[W]e review the facts in the light most favorable to appellee[], [mother,] granting [her] all reasonable inferences that can be drawn from the evidence, because [she was] the prevailing part[y] below." *Geouge v. Traylor*, 68 Va. App. 343, 347 (2017).

D.B. was born to mother and father on October 13, 2006. Shortly after D.B.'s birth, parents divorced. Years of litigation regarding the child (*e.g.*, custody and visitation disputes) followed. The most recent custody order before the current dispute was entered on June 6, 2014, and was the

---

[1] Father filed two pre-argument motions: (1) a motion for *supersedeas* bond related to the order that father pay the GAL fees and (2) a motion requesting that this Court disregard "any citations or arguments of [mother] in her Brief with reference to the January 24, 2020 Rule to Show Cause Transcript."

Father's motion for *supersedeas* bond is denied.

Regarding father's second motion, father, in assignment of error (9), argues that the circuit court erred in considering the January 24, 2020 show cause hearing transcript. Evaluation of this error requires that we review the January 24, 2020 show cause hearing transcript to determine whether the circuit court relied on it or relied on it erroneously. Thus, father's motion is denied.

[2] Part of this record was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues father has raised. Evidence and factual findings below necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

governing order during the proceedings below. Under this order, parents had joint legal custody of D.B. and father had primary physical custody of D.B. The order also required that, unless mother was to pick D.B. up from school, the parent relinquishing custody of D.B. was responsible for taking D.B. to the other party's residence. Mother had visitation with D.B. every other weekend and some Wednesday evenings.

The events leading up to the current dispute began in June 2018, when mother filed an "Emergency Motion to Modify Custody and Visitation," alleging that D.B.'s stepmother, Teresa Bailey ("stepmother"), assaulted D.B., in violation of a protective order previously entered against stepmother.[3] In the motion, mother requested sole legal and physical custody of D.B. On April 9, 2019, father filed a "Cross Motion to Modify Custody and Visitation," alleging that mother was taking actions to alienate father from D.B., including fabricating allegations that stepmother assaulted D.B. On July 30, 2019, father filed a motion for psychological evaluations of mother and D.B., requesting that Dr. Ling conduct the evaluations. On August 8, 2019, the court granted father's motion for psychological evaluations and ordered Dr. Ling to complete the evaluations and produce a written report. On November 6, 2019, father filed an emergency motion to "Suspend Mother's Visitation Pending Investigation," based on allegations that mother threatened to kill D.B. and violated the 2014 custody order by drinking alcohol to excess in front of D.B. On November 12, 2019, the circuit court denied father's motion without prejudice, with the option for father to place the matter back on the docket after Dr. Ling's evaluations were complete. On November 8, 2019, father filed a motion for mother to show cause why she should not be adjudged in contempt of court for violating the 2014 custody order due to mother's alleged excessive drinking in D.B.'s presence/exposing D.B. to those who had done so. On November 21, 2019, mother filed an

---

[3] The court denied mother's motion, except to incorporate a CPS safety plan dated June 25, 2018, as an order of the court, and continued that matter as a general custody/visitation modification.

emergency motion for father to show cause why he should not be adjudged in contempt of court for violating the 2014 custody order by "withholding [D.B.] from his scheduled visitation on three consecutive incidences" and father "indicat[ing] that he intends to continue to" do so.

On November 25, 2019, the circuit court issued an order stating that motions to show cause were not "literal emergenc[ies]" and directed the parties to schedule a date to hear the motions. The circuit court also noted that it "expects both parties to adhere to the parenting time arrangements in the current [custody] order unless and until that order is modified."

The court held a hearing on both parents' motions to show cause on January 24, 2020. In support of her motion, mother testified that she had not seen D.B. for visitation since November 15, 2019, in violation of the current custody order. D.B. testified in support of father's motion. The court denied father's motion but granted mother's motion. The court entered an order finding father "in contempt for not complying with the provisions related to the award of visitation of the mother." The court, however, ordered that the finding of contempt be stayed, "and the imposition of sentence in that matter is suspended" until trial on the motions to modify custody and visitation, ordering that if father "is compliant with said custody & visitation order between this date and the trial[,] . . . such finding of contempt will be vacated and dismissed."

Trial on mother's and father's motions to modify custody and visitation was held over two days on December 15, 2020, and March 8, 2021. Leading up to the trial, on November 20, 2020, father moved to quash one of mother's expert witnesses, Dr. Behrmann, or, alternatively, moved to limit Dr. Behrmann's testimony. On December 4, 2020, the circuit court denied both motions.

On December 15, 2020, before opening statements, the circuit court vacated the January 24, 2020 finding of contempt against father. That same day, the parties read into the record the following stipulations regarding custody of D.B.:

> a. Thanksgiving: Thanksgiving shall be defined as after school at 4:30 p.m. the day school recess begins for Thanksgiving until

Sunday at 6:00 p.m. The parties shall alternate having Thanksgiving with the Child each year. Mother shall have the Child in even years and Father shall have the Child in odd years.

b. Spring Break: Spring Break is defined as after school at 4:30 p.m. the day school recess begins for Spring Break until the day before school resumes at 6:00 p.m. The parties shall alternate Spring Break with the Child each year. Mother shall have the Child in even years and Father shall have the Child in odd years.

c. Mother's Day/Father's Day: The respective parent shall have the child from after school on Friday at 4:30 p.m. until Sunday at 6:00 p.m. each year.

d. Transportation: The party starting their custodial time with the Child shall be responsible for transportation from the other party's home.

Mother testified in support of her motion to modify. Mother testified that she did not see D.B. for three months, from November 2019 to January 2020. Mother also testified that she feels like father "tries to undermine [her] authority with [D.B.] as his mother." She noted that D.B. had "poor academic progress" when father was not following the custody arrangement and that during that time, mother was unable to help D.B. with his schoolwork like she normally did during their visits. Mother testified that, to her knowledge, Robert Vernail, the current GAL, had done nothing to assess mother's parenting skills.

Dr. Ling testified as an expert in support of mother's motion. He testified that his most recent evaluation of mother "did not suggest that there was a significant alcohol or substance abuse problem for her." Dr. Ling testified that, according to his evaluation, mother demonstrates "appropriate parenting knowledge and strategies." He also testified that D.B. was "much more egocentric and more self-involved" and it seemed to Dr. Ling that D.B. "was responding to circumstances between himself and whichever parent [had custody] of him by going to . . . the [other] parent . . . and stating that he was having difficulty, which could include him reporting that he was being abused or he was being physically assaulted."

Dr. Behrmann also testified as an expert in support of mother's motion. Dr. Behrmann defined the concept of "parental alienation" as "when there's a preexisting good relationship the

child has with . . . a parent" who "doesn't have any severe mental health issues, there's been no real confirmed abuse of the child by that parent," and "the child wants to refuse, resist, rebel seeing that parent, liking that parent." Additionally, "the other parent on the other side has been engaged in a repetitive denigration of the parent that the child no longer wishes to see." Dr. Behrmann noted that when he uses the term "parental alienation," he is referring specifically to the conduct described in the "parental alienation" definition he enumerated. He clarified that he "want[ed] to distinguish it between the alienating behaviors that someone can conduct that don't necessarily mean the child is alienated." He noted that alienating behaviors can include: "when a parent repetitively denigrates the other parent"; when a parent "seeks to prevent the remediation that the other parent wants with [the] child"; "when the parent discusses legal issues" regarding the other parent; and when the parent "accuse[s] the other parent of being dangerous or having severe mental health issues." Based on his evaluation of mother, Dr. Behrmann concluded that mother did not engage in parental alienation against father. Dr. Behrmann testified that, based on his evaluation of mother, she was "a good mom," an "adequate" mother, and this opinion was "established to a reasonable degree of psychological certainty." He also noted that, in the multiple videos that father took of D.B. inside father's home, father engaged in alienating behaviors against mother. Dr. Behrmann noted that he "actually . . . observed interaction" between D.B. and mother. He also testified that there is no parental alienation in this case because "[D.B.] is observably having a positive relationship with both parents at different times. You can't have alienation if the child isn't alienated."

During Dr. Behrmann's testimony, mother played clips from videos father had recorded in his home speaking with D.B. In one video, father told D.B., "I don't ever go back to your mom and tell her '[D.B.] told me this' . . . because I know that she's going to come after you." Later, father seemingly confirmed to D.B. that he had said it was okay to lie to mother: "[Y]ou're

talking about what I told you 'do what you need to do so that your mom doesn't yell at you,'" to which D.B. replied "yes."

Father sought to have D.B. testify in support of father's motion and asked that the court question D.B. so that D.B. would not be subject to "the pressure of counsel cross[-]examining and direct examination." Mother objected. The court sustained the objection and did not permit D.B. to testify.

Father testified in support of his motion. He testified that in November 2019, he filed an emergency motion to suspend mother's visitation based on D.B.'s allegations that mother abused alcohol in front of him. According to father, D.B. had been making those allegations since August/September 2019. Father testified, however, that at that time—in November 2019—he had done nothing to verify these allegations other than talking to D.B. and showing him pictures of alcohol. Father testified that after the January 24, 2020 show cause hearing, he had reached out to Matt Knight, the father of mother's other son, to help Knight in his custody battle against mother. Father offered to Mr. Knight contact information for the court reporter from the show cause hearing, videos father had taken of D.B., and emails between father and mother.

Father informed the court that their last witness would be Dr. Hoffmann. The court responded, "Well, we're out of time. The case was set for two days. We end court at 4:30." The court did not allow Dr. Hoffmann to testify but permitted father to proffer Dr. Hoffmann's testimony. Father submitted a lengthy proffer. Dr. Hoffmann would testify that: (1) she did not believe that "any of the conversations between [father and D.B.] were the primary or sole reason that there was a rupture in the relationship between [D.B. and mother]," although acknowledging that some of these conversations were "inappropriate"; (2) multiple factors, not just withholding a child from visitation with the other parent, "typically lead to parental alienation"; (3) based on her conversations with D.B., D.B. "in his mind definitely believed that . . . there was a threat made to

- 8 -

him from his mother and by his mother"; (4) there was no parental alienation here, but rather, "contact resistance and refusal"; and (5) she believed D.B. would not benefit from reunification or conjoint therapy at that time. Father further proffered testimony that would have related to the integrity of Dr. Behrmann's testimony; Dr. Hoffmann would testify that: (1) "she had an opportunity to review Dr. Behrmann's report as well as the raw data that was submitted to her,"; (2) "Dr. Behrmann's report that was submitted before this court completely eliminated a lot of the major things that were supported by the raw data,"—"based on the raw data, [mother] was in the third percentile with respect to her . . . competence to be able to parent, and that she was in the sixth percentile to be able to deal with reinforcement." "[N]one of [this information] appeared in Dr. Behrmann's report,"; (3) "Dr. Behrmann . . . left out the fact that he believed that [mother] had a high desirability and that [mother] was not fully disclosing; (4) "Dr. Behrmann cherrypicked what he wanted this court to hear"; (5) mother's "personality does cause some concern with respect to her ability to parent, her d[y]sfunctional nature"; (6) Dr. Behrmann should have but did not "reach[] out to third parties to corroborate . . . what was being said" by mother; (7) she (Dr. Hoffmann) "would have used further evaluations and [testing] with respect to . . . parental abilities and capacity that go[] beyond . . . self-reporting"; (8) "somebody in the medical profession would not be able to [draw a conclusion], based on [the evaluation] done by Dr. Behrmann, about somebody's fitness as a parent"; (9) based on her experience and knowledge of the profession's ethical guidelines, Dr. Behrmann had a conflict because "he did a custodial evaluation and then did an independent evaluation of [mother]"; (10) it is "illegal and contrary to the board standards for somebody, even if it's accidental . . . to be practicing in the Commonwealth of Virginia without having a license," and "Dr. Behrmann was not licensed in the Commonwealth of Virginia on June 30, 2020, until November 20, 2020"; (11) "it is [a] regular course of action [in the profession]" that regarding divorced parents, "before any practitioner . . . meet[s] with the child, [he or she should] reach out to

- 9 -

the other parent to get consent and absent [that consent] or a court order," the practitioner should not meet with the child; (12) "the credential of the American College of Forensic Examiners that Dr. Behrmann puts at the end of all his reports" "is merely an online course" and "not an actual certification."

Mother proffered her dispute of certain facts and offered alternate facts. Mother proffered that: Dr. Hoffmann "did not do any testing, like Dr. Ling and Dr. Behrmann. No psychological testing, no cognitive testing, no academic testing, no emotional testing. All she did was meet with [D.B.] once, meet with [father] once, meet with [father] and [his counsel] once, and then went over to [father's] household once." Mother proffered that Dr. Hoffmann did not do any evaluations of D.B., mother, or father and has never talked to or observed mother. Mother further proffered that Dr. Hoffmann did not consider nearly as much data as Dr. Ling and Dr. Behrmann did— Dr. Hoffmann did not look at notes from D.B.'s prior therapist; at prior evaluations conducted by Dr. Ling in 2009 and Dr. Behrmann in 2012; or at various other reports "all listed by Dr. Ling." Mother proffered that Dr. Hoffmann's "sole purpose, according to her disclosure, was to rebut Dr. Behrmann."[4]

During closing arguments, the GAL noted that for the "practical reason" that D.B. "has a peer group that's developing" at "Loudoun Valley High School," D.B. should remain close to the school. The GAL stated that mother no longer lives near the high school, but father does. The GAL recommended that D.B.'s "primary residence should remain in [father]'s household. Again, primarily practically. He's been [there] — since the 2014 court order."

---

[4] Dr. Behrmann's involvement with the Bailey-Sarina family dates back to at least November 2008, when the circuit court ordered him to complete a custody evaluation regarding D.B. Dr. Ling's involvement with the family dates back to at least August 2019, when the circuit court appointed him to complete psychological evaluations of mother and D.B. In contrast, Dr. Hoffmann only became involved with the family around August 2020, when father retained her as an expert witness for the motion to modify custody and visitation at issue here.

After the trial, both parties filed written post-hearing closing arguments in support of their motions. In her brief, mother stated: "[t]o the extent the Court is inclined to grant sole legal custody to one parent as a means of resolving conflict with respect to co-parenting, then [mother] requests alternative relief in the form of sole legal custody instead of shared legal custody." The court entered an order on May 6, 2021 ("final order"), awarding sole legal custody and primary physical custody to mother. In the order, the court enumerated each of the ten factors the court must consider in determining child custody under Code § 20-124.3. As to one of the factors—the child's preference—the court stated, "There is insufficient evidence on this factor for the court to make a finding." The order also contained a provision stating that:

> Except as provided in the stipulation of the parties as to visitation, the Plaintiff Father is awarded visitation on alternating weekends from Friday at 4:00 pm. to Sunday at 7:30 p.m. The Stipulation as to Transportation and Visitation for Certain Holidays is incorporated into this order and made a part thereof for purposes of the agreed upon visitation.[5]

On May 14, 2021, the GAL filed a "Motion for Stay of Finality and for the Determination of GAL Fees." Also on May 14, 2021, father and the GAL filed a "Joint Motion to Clarify May 6[,] 2021 Opinion and Order and Motion to Stay," requesting that the court "[e]nter an order establishing a [visitation] schedule for Winter Break and Summer Vacation"; "[e]nter an order allocating the [GAL] fees"; and stay the final order. On May 25, 2021, the court ordered that "the [GAL] costs and fees shall be paid by . . . Father, no later than 45 days from this order."

Father now appeals from the final order modifying custody and the May 25 order allocating GAL fees.

---

[5] The stipulations specifically allocate time between the parents for Thanksgiving, Spring Break, Mother's Day, and Father's Day.

II. ANALYSIS[6]

Assignments of Error (3), (11), (12) & (13)

In assignments of error (3), (11), (12), and (13), father argues that the circuit court erred either by giving weight or not giving weight to certain evidence.

In assignment of error (3), father alleges that the circuit court erred in failing to consider the GAL's recommendation.

In assignment of error (11), he argues that the court erred in finding Dr. Behrmann's testimony credible. Relatedly, in assignment of error (12), father argues that the court erred in crediting only the parts of Dr. Behrmann's testimony that were favorable to mother and disregarding the parts favorable to father. Father contends that the court "did not consider that Behrmann was unethically and criminally practicing psychology in Virginia for a five[-]month period" due to a lapse in his license. Father also cites Dr. Behrmann's cross-examination testimony, in which he discusses the limitations of his evaluations and his findings that mother exhibits what father classifies as negative personality traits. Father argues it was error for the court not to discredit Dr. Behrmann's testimony given these facts.

In assignment of error (13), father contends that the circuit court erred in giving "no weight . . . to [Dr.] Ling's testimony regarding [mother's] inability to make decisions for [D.B.]" and not giving weight to "how [mother]'s internal conflicts had negative effects on relationships with individuals, including [D.B.] and [father]." Father argues that the court should have credited Dr. Ling's testimony that mother's purported problematic personality traits "cause[] problems in her relationship with [D.B.] and that such factors also present an issue when co-parenting with [father]."

_____

[6] For efficiency, we have grouped assignments of error based on similarity in the type of legal errors they allege and analysis they require.

Father posits that if the court had weighed the evidence in the manner he suggests, the court would have made a different ruling on custody.

Generally, "the [fact finder] is the judge of both the weight of the testimony and the credibility of witnesses." *Spratley v. Commonwealth*, 154 Va. 854, 864 (1930). "Traditional principles dictate, both in the civil and criminal law, that the determination of a witness' credibility is within the fact finder's exclusive purview because he has the best opportunity to observe the appearance and demeanor of the witness." *Goodyear Tire & Rubber Co. v. Pierce*, 5 Va. App. 374, 381 (1987). The fact finder, however:

> [M]ay not arbitrarily or without any justification therefor give no weight to material evidence, *which is uncontradicted and is not inconsistent with any other evidence in the case, or refuse to credit the uncontradicted testimony of a witness*, . . . *whose credibility has not been impeached*, and whose testimony is not either in and of itself, or when viewed in the light of all the other evidence in the case, unreasonable or improbable, and *is not inconsistent with any fact or circumstance to which there is testimony or of which there is evidence*.

*Spratley*, 154 Va. at 864 (emphasis added). In other words, a fact finder may generally decide to give no weight to evidence. It may not, however, disregard/give no weight to evidence that is "uncontradicted and not inconsistent with any other evidence in the case." *Drinkard v. Commonwealth*, 163 Va. 1074, 1081 (1935).

Here, regarding assignment of error (3), the court properly gave no weight to the GAL's recommendation that father have primary custody of D.B. because it was contradicted by other evidence. First, the GAL made this recommendation for the purposes of "practical[ity]," as D.B. had lived with father since 2014 and attended school near father's house, not necessarily because father is a more suitable parent. Second, the GAL's recommendation is contradicted by other evidence in the record, namely evidence that shows mother to be a more suitable parent. Additionally, evidence of father's parental capacity issues contradicts the GAL's

recommendation. Such evidence includes, but is not limited to, Dr. Behrmann's and Dr. Ling's testimony that mother is an adequate parent, mother's testimony that father did not grant her visitation with D.B. for a period of about three months, and videos showing father denigrating mother to D.B. Because the GAL's recommendation was not "uncontradicted and not inconsistent with any other evidence in the case," it was within the circuit court's discretion to disregard that recommendation. Thus, the circuit court did not err in doing so.

Regarding assignment of error (11), it was with the circuit court's "exclusive purview" to decide how much weight to give Dr. Behrmann's testimony because the court had the best opportunity to observe the appearance and demeanor of Dr. Behrmann. Regarding assignments of error (12) and (13), the court did not err in failing to give weight to certain parts of Dr. Behrmann's and Dr. Ling's testimony because this evidence was contradicted by other evidence. As fact finder, the court had the best opportunity to observe the appearance and demeanor of both witnesses and decide which parts of the testimony to credit. In fact, father, in his brief, notes that evidence he asserts the court should have credited is contradicted by other evidence in the record.

The court could have disregarded testimony that Dr. Behrmann was practicing psychology in Virginia for a five-month period without a license, instead crediting Dr. Behrmann's testimony based on evidence that Dr. Behrmann (1) has been licensed in Virginia since 2001—with a "brief hiatus . . . due to [a] technical malfunction on the internet"; (2) has never faced disciplinary action in Virginia related to his license; (3) contacted the "Virginia licensing board after this technical glitch," after which his license was reinstated; and (4) for the purpose of caution, did not base any of his opinions given at trial on "interviews or observations or reporting [he] did" during the time his license had lapsed, and also did not collect any fees for work done during that period. As mother correctly notes on brief, this "technical

- 14 -

glitch" with the renewal of Dr. Behrmann's license was clearly explained and did not require the circuit court to reject his testimony.

Further, Dr. Behrmann's testimony discussing the limits of his evaluations and his findings that mother has purported problematic personality traits is contradicted by his testimony that the opinion he expressed about mother "being an adequate mom" was "established to a reasonable degree of psychological certainty."

Dr. Ling's testimony that mother's potentially problematic personality traits could affect her relationship with D.B. and ability to co-parent with father is also contradicted by Dr. Behrmann's testimony that mother is "an adequate mom" and by Dr. Ling's own testimony that, according to his evaluation, mother demonstrates "appropriate parenting knowledge and strategies." Because other evidence in the record contradicts the parts of Dr. Behrmann's and Dr. Ling's testimony unfavorable to father, the circuit court could use its discretion in weighing Dr. Behrmann's and Dr. Ling's testimony, as well as their credibility.

Accordingly, the circuit court did not err in disregarding certain evidence because such evidence was contradicted by other evidence in the record.

<u>Assignments of Error (9) & (10)</u>

Father combines assignments of error (9) and (10) in his brief and argues that the circuit court abused its discretion in considering evidence from the January 24, 2020 show cause hearing—both the final contempt order and the transcript of the hearing. Father asserts that "the court has used extrajudicial information from a prior proceeding" in finding that "father has willfully withheld the child from mother's court ordered visitation on at least one occasion." He contends that "there was no evidence presented by either party regarding [father] willfully withholding [D.B.] from visitation." Lastly, father argues that the court cannot consider the

contempt order as evidence because the finding of contempt was vacated, making it "as if the finding did not exist."

Father's contentions are unfounded. It is not true that there is no evidence in the record that father willfully withheld D.B. from visitation at least once. Mother testified at the hearing on December 15, 2020, that father had refused to allow her to visit with D.B. and she did not see D.B. for three months. Mother also testified that her relationship with D.B. during that three-month period "was nonexistent." Father did not object to those statements. According to the prior custody arrangement, mother had scheduled visitation with D.B. every other weekend and some Wednesday evenings, which did not occur for three months. Additionally, the custody order required that, unless mother was to pick D.B. up from school, the parent relinquishing custody of D.B. was responsible for delivering D.B. to the other party's residence. Thus, the circuit court properly inferred that father willfully withheld D.B. from visitation at least once. *See Bohon v. Manning*, 210 Va. 173, 175 (1969) (noting that a fact could be "reasonably inferred from the evidence").

Thus, father's contention that the court relied on extrajudicial information in making its ruling is unfounded and the circuit court did not err.[7]

Assignment of Error (19)

Father argues that the "court abused its discretion in not making a determination relative to Winter Break and Summer Vacation . . . as required by Va. Code § 20-124.2." He contends that the judge "failed to address an issue before the court" and such failure "is not harmless error."

---

[7] We note that even if the circuit court had erred in considering evidence from the January 24 hearing, it would be harmless, as father's "propensity . . . to actively support [D.B.]'s contact and relationship with [mother]" was but one of ten factors to be considered in determining the best interests of the child as it relates to custody.

This assignment of error mischaracterizes the record. As mother correctly notes, the court did not fail to make a ruling about visitation over winter break and summer vacation. The court's final order regarding the motion to modify custody and visitation states:

> Except as provided in the stipulation of the parties as to visitation, the Plaintiff Father is awarded visitation on alternating weekends from Friday at 4:00 pm. to Sunday at 7:30 p.m. The Stipulation as to Transportation and Visitation for Certain Holidays is incorporated into this order and made a part thereof for purposes of the agreed upon visitation.

From this language, it appears the court did consider holidays when crafting its order. The visitation schedule set out in this part of the order is the schedule to apply for all days, including holidays. The court, in not specifying unique terms for holidays, simply ordered the parties to abide by the regular custody and visitation schedule. The circuit court did not fail to make a determination regarding summer vacation and winter break, and as such, the circuit court did not err.

### Assignment of Error (17)

Father argues that the circuit court erred in awarding sole legal custody and primary physical custody to mother when "[n]either [p]arty nor the [GAL] [r]equested [s]ame." He contends that "[w]hen a party sets forth a position contrary to their prior prayer for relief, that party is bound by the new request," and he cites *Johnson v. Buzzard Island Shooting Club, Inc.*, 232 Va. 32, 36 (1986), in support of his claim. Mother, in her "Amended Motion . . . originally sought an award of sole legal and physical custody of [D.B.] with visitation to [father]." Mother later requested in her opening argument, oral closing argument, and written closing argument "that the court maintain joint legal custody and award 'equally shared physical custody' of [D.B.]." Father argues that under *Johnson*, the court is bound to award only her second request for relief.

- 17 -

We first note that father's characterization of the facts is not accurate. Mother's original motion asked for sole legal and physical custody of D.B., as well as "any other and further relief this Court deems just and mete." While her request during the hearing was for shared custody, she never withdrew her pleading. Further, in her written closing argument, mother stated: "[t]o the extent the Court is inclined to grant sole legal custody to one parent as a means of resolving conflict with respect to co-parenting, then [mother] requests alternative relief in the form of sole legal custody instead of shared legal custody." This statement functioned as a request for alternative relief in the form of sole legal custody, rather than shared custody, and the court could therefore grant the relief she sought in that request.

Second, father misreads *Johnson*. Under *Johnson*, "a court in equity may properly grant appropriate relief not specifically requested" as long as such relief is consistent "with the case alleged by the bill or the relief specifically sought." 232 Va. at 36. This Court has held that a court may award relief to a party, even if that form of relief was not specifically requested by that party. In *D'Ambrosio v. D'Ambrosio*, 45 Va. App. 323, 336 (2005), we found that the circuit court properly gave one parent sole authority to choose the child's pediatrician, noting that "[a]lthough [one party] did not request the sole right to select [the child's] pediatrician in her pleadings, she nonetheless prayed that the court grant any other relief it deemed just." This Court found that "the trial court did not err in fashioning 'an appropriate remedy that comport[s] with the best interest of the children, even [though it was not] specifically requested by the mother or father.'" *Id.* at 338 (alterations in original) (quoting *Cloutier v. Queen*, 35 Va. App. 413, 424 (2001)).

The same is true here. The circuit court may award a remedy not requested by either party, as long as such relief is consistent with the case as it is alleged in the pleadings and consistent with the relief mother originally sought. We hold that the relief awarded here—

- 18 -

granting sole legal custody and primary physical custody to mother—is consistent with the case as described in the pleadings; the pleadings illustrate the difficulty the parents have in co-parenting D.B., and the remedy of sole custody addresses this difficulty. Additionally, relief in the form of sole legal and primary physical custody to mother is not necessarily inconsistent with relief in the form of joint legal custody/equal physical custody, as evidenced by mother's request in her written closing argument for either form of relief.

Assignment of Error (8)

Father argues that the circuit court "erred in considering Behrmann's expert testimony regarding parental alienation by [father,] when the record clearly established that [mother] withdrew Behrmann's expert opinion regarding same in her supplemental discovery response[.]" Father cites mother's opposition to his motion to quash Dr. Behrmann as an expert, filed November 17, 2020. The motion states that "[b]ased upon new information that has been made available, Mother and Dr. Behrmann have withdrawn the October 16, 2020 Supplemental Expert Report of Dr. Behrmann and have amended Mother's supplemental interrogatory response to exclude any opinions regarding Mother's claim of parental alienation against Father." Father contends that, because of the withdrawal of this expert opinion, he "did not prepare to address parental alienation with Behrmann and did not depose him on this topic."

Father misstates the facts. At trial, Dr. Behrmann did not provide expert testimony that father engaged in parental alienation against mother. Mother stated to the court that Dr. Behrmann was "not testifying to actual parental alienation." Dr. Behrmann testified that "parental alienation" has a specific definition and clarified that parental alienation is different from "alienating behaviors that someone can conduct that don't necessarily mean the child is alienated." In fact, Dr. Behrmann testified that there is no parental alienation in this case

- 19 -

because D.B. "is observably having a positive relationship with both parents at different times. You can't have alienation if the child isn't alienated."

Instead, Dr. Behrmann merely testified that while reviewing the multiple videos father had filmed of him interacting with D.B., he noticed "a lot of allegations the father was making on the videos about the mother." Dr. Behrmann's concern was "that it demonstrated . . . alienating behaviors by [f]ather repetitively to his son against [m]other[.]"

Father cannot claim that he was not on notice that Dr. Behrmann would discuss the negative effect of father's behavior, demonstrated in the multiple videos, on D.B.'s relationship with mother. Although mother withdrew her October 16, 2020 supplemental expert report of Dr. Behrmann and amended her supplemental interrogatory response to exclude any opinions regarding her claim of parental alienation against father, mother did not withdraw Dr. Behrmann's initial expert report dated August 25, 2019. In that report, Dr. Behrmann notes his concerns about father "negatively influencing [D.B.] regarding his mother," based on Dr. Behrmann's observation of the videos. Dr. Behrmann specifically notes that on two videos, father "negativizes mother" and is "being quite negative about mother." Referring to father's behaviors as "alienating behaviors" at trial does not change the fact that father was on notice that Dr. Behrmann would testify about behaviors father undertook, specifically in the multiple videos, that negatively influenced D.B.'s relationship with mother. Moreover, the circuit court also saw the videos and could draw its own conclusions about father's behavior. Accordingly, we hold that the circuit court did not abuse its discretion in allowing Dr. Behrmann to opine on "alienating behaviors."

## Assignment of Error (18)

Father argues that the circuit court erred in denying his motion to quash Dr. Behrmann as an expert witness. He contends that, under the pretrial scheduling order entered on August 4,

2020, mother had to designate her experts by September 16, 2020, yet "[t]he first time . . . [mother] proposed that Behrmann would be testifying regarding parental alienation against [father] was on October 1[6], 2020."

Father's assertions misstate the facts. Mother filed an expert designation dated May 16, 2019, entitled "Defendant's Supplemental Answers to Interrogatories" in which she designated Dr. Behrmann as an expert witness. Although she did not disclose that Dr. Behrmann would testify "regarding parental alienation against [father]" until October 16, 2020, as noted in our review of assignment of error (8), *supra*, Dr. Behrmann did not ultimately testify that father engaged in parental alienation against mother. In fact, as father notes in his argument regarding assignment of error (8), mother later withdrew Dr. Behrmann's supplemental report dated October 16, 2020. Father has not shown how he was unfairly surprised or prejudiced by receiving this supplemental report on October 16, 2020. Thus, we hold that the circuit court did not abuse its discretion in denying father's motion to quash Dr. Behrmann as an expert witness.

Assignments of Error (5) & (6)

Father combines assignments of error (5) and (6) and argues that the circuit court "abused its discretion in not allowing [father] to put on his complete case," "allowing [mother] to put forth evidence for 1.5 days of the 2 days of trial," and "prohibiting [father's] expert witness Dr. Hoffmann from testifying in [c]ourt and requiring [father's] counsel to proffer the testimony."

Father emphasizes the time allotted to each party, as well as the circuit court's directive that mother and father present both oral and written closing arguments, calling it "unnecessary." Father argues that instead, "the court should have allowed for Dr. Hoffmann to give her testimony and require only written closing arguments." He states that in the alternative, the court should have continued the trial or continued to hear evidence.

This Court affords a high level of deference to a trial court's decision on matters of trial management. *See Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005).[8] Although "a litigant's right to a fair trial must not be made subordinate to the [court's] efforts to control its docket," *Peterson v. Castano*, 260 Va. 299, 304 (2000), trial courts have "significant latitude in managing their dockets," *deHaan v. deHaan*, 54 Va. App. 428, 446 (2009). "[T]he time allowed counsel for argument is within the sound discretion of the court, the exercise of which will not be interfered with by an appellate court in the absence of a clear showing of prejudice to the substantial rights of the complaining party." *Brown v. Peters*, 202 Va. 382, 391 (1961). Accordingly, because the circuit court's limitation of the time allotted for trial resulted in father being unable to introduce witness testimony, we must determine whether the exclusion of such testimony prejudiced father.

"In Virginia, when testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer." *Massey v. Commonwealth*, 67 Va. App. 108, 132 (2016) (quoting *Ray v. Commonwealth*, 55 Va. App. 647, 649 (2010)); *see Brittain v. Brittain*, No. 1944-10-4, slip op. at 5 (Va. Ct. App. Dec. 20, 2011) (applying proffer analysis to alleged exclusion of child's testimony in custody modification proceeding). The proffer must "[allow] us to examine both the 'admissibility of the proposed testimony,' and whether, even if admissible, its exclusion 'prejudiced' the proffering party." *Massey*, 67 Va. App. at 132 (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 368 (2006)).

When a trial court commits a non-constitutional error, a reviewing court will look at whether the record plainly discloses "that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678; *Clay v. Commonwealth*, 262 Va. 253,

---

[8] *See also Parsons v. Commonwealth*, 154 Va. 832, 852 (1930) ("Cases should not be reversed merely because the judge was impatient.").

259 (2001); *see Virginia Bd. of Med. v. Zackrison*, 67 Va. App. 461, 484-85 (2017) (applying non-constitutional harmless error analysis in civil case where expert testimony was excluded). As part of this harmless error analysis, this Court must look at whether the alleged error substantially influenced the fact finder. *Clay*, 262 Va. at 259. If this Court cannot conclude whether the error substantially swayed the fact finder's determination, the judgment will be reversed. *Id.* at 260. Yet the judgment will stand if the error had no or only slight influence. *Id.*

Under Virginia Rule of Evidence 2:702(b), "[expert t]estimony that is speculative, or which opines on the credibility of another witness, is not admissible."

Here, the circuit court correctly noted that Dr. Hoffmann could have testified had father managed his time differently, stating, "[i]f the parties use up [their time] and don't pay attention to the clock, there's not much the court can do for that." The court observed that mother's case took more time because of extensive questioning of her witnesses by father and said that "it really is not just one side of the case getting the opportunity to fully present their case and the other not. There was just a different set of priorities when it came to time management. And that's—that's something that counsel has to govern themselves accordingly on."

Father suffered no prejudice as a result of the circuit court prohibiting Dr. Hoffmann from testifying because, out of all of the evidence father sought to introduce, (1) most of it would have been inadmissible and (2) the admissible portions of the testimony would not have changed the outcome.

First, the majority of Dr. Hoffmann's proposed testimony opines on the integrity of Dr. Behrmann's testimony, which is inadmissible under the Virginia Rules of Evidence. According to father's proffer, Dr. Hoffmann would have testified that Dr. Behrmann omitted information from his report, "cherrypicked" findings, and did not follow proper evaluation protocol. Because this testimony amounted to an inadmissible opinion, appellant cannot claim prejudice for its rejection

based on the court's determination that hearing the testimony would create undue delay.  Other parts of Dr. Hoffmann's proposed testimony seem to seek to rebut mother's purported claim that father engaged in parental alienation against mother.  As detailed in our discussion of assignment of error (8), at trial, mother did not make a claim of parental alienation against father.  Thus, Dr. Hoffmann's testimony seeking to rebut a claim of parental alienation would have been irrelevant and thus, inadmissible.

Second, assuming, without deciding, the admissibility of Dr. Hoffmann's proposed testimony that (1) D.B. really "believed that was there was a threat made to him . . . and by his mother" and (2) she "believes D.B. would not benefit from reunification or conjoint therapy at this time," we rule that excluding such testimony did not prejudice father.  Whether D.B. believes his mother threatened him and whether D.B. and his mother would benefit from reunification therapy does not change the fact that, as the trial court found, mother is a fit parent to care for D.B.  This finding is supported by evidence in the record, discussed in our review of assignments of error (14) through (16), *infra*.  The exclusion of the rest of Dr. Hoffmann's proposed testimony that attempts to rebut mother's supposed claim that father's behavior caused a "rupture in the relationship between [D.B.] and mother" also does not prejudice father.  Mother's counter proffer notes that Dr. Hoffmann "did not do any testing, like Dr. Ling and Dr. Behrmann.  No psychological testing, no cognitive testing, no academic testing, no emotional testing.  All she did was meet with [D.B.] once, meet with [father] once, meet with [father] and [father's counsel] once, and then went over to [father's] household once."  Mother further proffered that Dr. Hoffmann did not do any evaluations of either parent or D.B. and did not look at as large amount of data as Dr. Ling and Dr. Behrmann did.  In reviewing the proffers from both sides, we conclude that admission of this evidence would not have changed the outcome, when weighed against the large amount of evidence in favor of

granting sole legal and primary physical custody to mother, discussed in our review of assignments of error (14) through (16), *infra*.

Accordingly, the circuit court did not abuse its discretion in managing its docket in this manner and preventing Dr. Hoffmann from testifying.

Assignment of Error (4)

Father contends that the circuit court "[a]bused its [d]iscretion in [o]rdering [father] to pay all of the GAL Fees, without a [h]earing and [p]resentation of [e]vidence." He argues that "[j]ustice and equity require []a hearing, including the taking of evidence and testimony, on the allocation of GAL fees[.]" He contends that "[t]he error is not harmless as the court heard no evidence on the financial situation of each party" and that "[t]he court provides no basis for the full award against [father]."

Addressing first father's contention that a hearing on the allocation of GAL fees is required, we note that father cites no authority in support of his argument. Father does list a string of unpublished cases, but none of these cases supports his assertion that the circuit court had to hold a hearing before apportioning GAL fees to the parties. In fact, in one of the unpublished cases father cites, *Evans v. Evans*, No. 1936-09-3, slip op. at 2 (Va. Ct. App. June 29, 2010), the parties merely submitted written arguments to the circuit court, after which the circuit court issued a letter opinion. In that letter opinion, the circuit court wrote that "[e]ach of the parties had an opportunity to brief these issues [including the GAL fees] and I have reviewed them in arriving at my decisions herein." *Id.* at 5. This Court affirmed the circuit court on appeal.

Father also cites *Sims-Bernard v. Bernard*, No. 0918-17-2 (Va. Ct. App. Jan. 23, 2018), but that case also fails to bolster his argument. The appellant in *Sims-Bernard* argued that "the

court erred by failing to hold a hearing before awarding the [GAL] fees." *Id.* at 9. This Court declined to consider that argument, stating:

> With regard to mother's contention that she was denied a hearing on the GAL fees, mother argues that the court's consideration of the parties' motions and relevant memoranda before awarding fees was insufficient. However, mother fails to fully develop this argument in her brief, or provide adequate authority to support it.

*Id.* at 9 n.5.

Likewise, we decline to consider father's contention that the circuit court had to hold a hearing before it awarded GAL fees. "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." *Buchanan v. Buchanan*, 14 Va. App. 53, 56 (1992); *see also* Rule 5A:20(e) (requiring that an appellant cite relevant authority in support of an argument presented on appeal). Because father cites no authority to support his argument that a hearing was required before the circuit court could allocate GAL fees, we will not consider that argument on appeal.

We next turn to father's argument that the circuit court abused its discretion in ordering him to pay all of the GAL costs and fees. "The decision to apportion guardian fees between both parties or to one party alone . . . involves a matter within the [trial court]'s discretion." *Kane v. Szymczak*, 41 Va. App. 365, 375 (2003) (upholding circuit court's decision to assess all GAL fees to one party); *see also Evans*, No. 1936-09-3, slip op. at 6 (upholding circuit court's ruling that a party be responsible for eighty percent of the GAL's bill where the party "created the majority of this scenario and he, therefore, should be the one to bear the burden of the costs for that"). "Because each case presents its own unique set of equities, principles of appellate review steer clear of inflexible rules and focus instead on 'reasonableness under all the circumstances.'" *Kane*, 41 Va. App. at 375 (quoting *Joynes v. Payne*, 36 Va. App. 401, 429 (2001)).

> The issue before us is not whether we find that the equities favor one or the other party, but whether the [circuit court] abused [its]

- 26 -

> discretion in finding that the equities favored the imposition of the guardian's fee on [one party]. While the [trial court] could have divided the guardian's fees between the parties, . . . he also had the discretion not to.

*Id.* at 376 (internal citation omitted).

Here, the court found, in its order regarding the parties' motions to modify custody and visitation, that "[t]he chief architect of the hostility . . . is the father. The father's litigation pursuits are clearly directed *against* the mother . . . as some form of retaliation or punishment." In contrast, the court observed that "mother's litigation pursuits are directed *toward* the safety and well-being of [D.B.]."

After father and the GAL filed their joint motion asking the court to allocate GAL fees, mother filed a response contending that father "should bear sole responsibility for [GAL] fees in this case." Mother cited the circuit court's observations that father "engaged in aggressive 'scorched earth' litigation tactics" and "acted maliciously 'with a goal of "winning" a fight against the mother rather than serving the interests of the child.'" Mother also noted that the GAL was necessary in the case mainly "due to father's aggressive conduct." She asked that the GAL fees be assigned to father "for his needless and hostile litigation tactics in this case."

Mother also demonstrated that father was in the better financial position and more able to fully cover the GAL fees. Mother noted that father displayed his high earning capacity by hiring counsel and multiple litigation experts, while mother had *pro bono* counsel. She also filed a DC-333 financial statement form, in accordance with the Virginia Guidelines for Payment of Guardians *ad Litem* for Children. The circuit court had ample opportunity to assess the equities and decide who should bear the cost of the GAL. The Guidelines call for the court to "consider the total amount for which the parents . . . will be responsible and apportion this amount, as appropriate."

Under the circumstances of this case, we cannot say that the court abused its discretion in requiring father to pay all GAL fees.

Assignments of Error (7), (1) & (2)

Assignments of error (7), (1), and (2) relate to the court's ruling prohibiting D.B. from testifying.

In assignment of error (7), father contends that the circuit court "erred in using and considering evidence from [D.B.'s] testimony at the rule to show cause hearing at the modification hearing." Father states that "the [circuit] court's basis for prohibiting [D.B.] from testifying was based on the court's knowledge from another case." He cites as evidence for this contention the court's statement, in ruling that it would not permit D.B. to testify, that it was "familiar with the file in this case, the background, its ten-year history roughly and [had] already had [D.B.] testify . . . previously." Father combines assignments of error (1) and (2) in his brief and contends that "[t]he [circuit] court abused its discretion in prohibiting [D.B.] from testifying." Father asserts that "[t]he [circuit] court's failure to determine [D.B.]'s competency and consider [D.B.]'s preference is reversible error" because a child's preference is one of the custody-determination factors under Code § 20-124.3. He argues this "error is not harmless given the lack of evidence of preference at trial."

This Court "reviews a trial court's ruling admitting or excluding evidence for abuse of discretion." *Payne v. Commonwealth*, 292 Va. 855, 866 (2016). "In Virginia, when testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer." *Massey*, 67 Va. App. at 132 (quoting *Ray*, 55 Va. App. at 649). A party must proffer the "'testimony he expected to elicit,' rather than merely his theory of the case." *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006) (quoting *Clagett v. Commonwealth*, 252 Va.

- 28 -

79, 95 (1996)). "The failure to proffer the expected testimony is fatal to [the] claim on appeal." *Massey*, 67 Va. App. at 132 (quoting *Molina*, 47 Va. App. at 367-68).

Assuming, without deciding, that all assignments of error were preserved at the trial level for appellate review, we rule that because father failed to proffer D.B.'s expected testimony to the circuit court, his argument that the testimony was improperly excluded is barred from appellate consideration.

To the extent that father argues the circuit court erred in failing to consider D.B.'s preference, introduced into evidence through other sources,[9] this contention will be addressed in our discussion of assignments of error (14) through (16), where we review the circuit court's weighing of the statutory factors for custody determinations.

Assignments of Error (14), (15) & (16); part of Assignment of Error (1)

In assignment of error (14), father argues that "[t]he evidence and record did not support the court's finding that 'father's actions have been contrived with a goal of "winning" a fight against the mother rather than serving the interests of the child.'" He contends that "[f]ailure to consider the evidence as a whole, regarding [father]'s actions, is an abuse of discretion" and thus, "[t]he ruling must be reversed."

Father combines assignments of error (15) and (16) and contends that "[t]he [circuit] court erred in not considering any evidence and/or argument provided by [father]." Father argues that the circuit court should have, but did not consider evidence of: (1) mother's "inability to communicate or maintain a civil relationship with [father]"; (2) mother's "constantly contacting [father] for unnecessary parental things"; (3) mother's "making medical/mental health decisions relative to [D.B.] without first consulting with [father]"; (4) "[t]he breakdown of the

---

[9] In his brief, father contends that "[b]ased on the report of the GAL and the proffer of Dr. Hoffmann, [D.B.]'s preference was contrary to the court's final determination[.]"

parent-child relationship between [mother] and [D.B.]"; (5) "[mother]'s false accusations and encouragement of [D.B.] to make false accusations against [stepmother]"; (6) "[t]he good father-son relationship between [father] and [D.B.]"; (7) "[father]'s ability to assess [D.B.'s] educational needs"; (8) the fact that "[father] has been [D.B.'s] primary physical custodian since June 6, 2014 without substantial issue over 8 years"; and (9) "D.B.'s preference."

Father also combines assignments of error (1) and (15) and argues that the court's failure to consider D.B.'s preference was reversible error, as the court must consider all factors under Code § 20-124.3 in determining custody.

"[W]e presume that the trial judge thoroughly weighed all the evidence and decreed custody as he believed would be in the best interest of the child[]." *Brown v. Brown*, 218 Va. 196, 200 (1977). Further:

> Although a trial court may fail to specify and recite in its order all the possible reasons and adequate bases for its determination, where it is obvious from review of the record that the trial court's determination was made with the child's welfare as paramount, and it is clear that the decision is in the child's best interests, the determination is not without substantial, competent, and credible evidence to support it.

*Farley v. Farley*, 9 Va. App. 326, 329 (1990).

"We review a court's decision regarding child custody for an abuse of discretion." *Armstrong v. Armstrong*, 71 Va. App. 97, 102 (2019). "Under this standard, the Court views the evidence in the light most favorable to the prevailing party and does not 'retry the facts or substitute [its] view of the facts for [that] of the trial court.'" *Id.* (alterations in original) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 266 (2003)). "If 'evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal.'" *Id.* (quoting *Brown v. Brown*, 30 Va. App. 532, 538 (1999)). "In issues of child

custody, 'the court's paramount concern is always the best interests of the child.'" *Id.* at 103

(quoting *Vissicchio v. Vissicchio*, 27 Va. App. 240, 246 (1998)).

> The Supreme Court [of Virginia] has identified three principal ways a circuit court abuses its discretion: [1] when a relevant factor that should have been given significant weight is not considered; [2] when an irrelevant or improper factor is considered and given significant weight; and [3] when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Id.* at 104 (quoting *Lambert v. Sea Oats Condo. Ass'n, Inc.*, 293 Va. 245, 253 (2017)).

Code § 20-124.3 requires that:

> In determining best interests of a child for purposes of determining custody or visitation arrangements, including any pendente lite orders pursuant to § 20-103, the court shall consider the following:
> 1. The age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs;
> 2. The age and physical and mental condition of each parent;
> 3. The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual, and physical needs of the child;
> 4. The needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers, and extended family members;
> 5. The role that each parent has played and will play in the future, in the upbringing and care of the child;
> 6. The propensity of each parent to actively support the child's contact and relationship with the other parent, including whether a parent has unreasonably denied the other parent access to or visitation with the child;
> 7. The relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in and resolve disputes regarding matters affecting the child;
> 8. The reasonable preference of the child, if the court deems the child to be of reasonable intelligence, understanding, age, and experience to express such a preference;
> 9. Any history of (i) family abuse as that term is defined in § 16.1-228; (ii) sexual abuse; (iii) child abuse; or (iv) an act of violence, force, or threat as defined in § 19.2-152.7:1 that occurred no earlier than 10 years prior to the date a petition is filed. If the court finds such a history or act, the court may disregard the factors in subdivision 6; and

10.  Such other factors as the court deems necessary and proper to the determination.

"Failure to consider all the factors set out in Code § 20-124.3 is reversible error." *Armstrong*, 71 Va. App. at 104.  The court, however, need not "quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." *Id.* (quoting *Sargent v. Sargent*, 20 Va. App. 694, 702 (1995)).  "Where the record contains credible evidence in support of the findings made by [the] court, we may not retry the facts or substitute our view of the facts for [that] of the trial court." *Id.* at 105 (alterations in original) (quoting *Bedell v. Price*, 70 Va. App. 497, 504 (2019)).

Regarding assignment of error (1), father asserts that the circuit court erred in failing to consider D.B.'s preference, introduced into the record through the GAL's recommendation.  The court, however, only need consider the child's preference "if the court deems the child to be of reasonable intelligence, understanding, age, and experience to express such a preference."  Code § 20-124.3(8).  In the court's final order, it enumerated and addressed all ten factors under the statute.  Regarding the child's preference, the court found that "[t]here is insufficient evidence on this factor for the court to make a finding."  Considering the court's final order in its totality, it appears that the court declined to accord weight to this factor because it found D.B. not to be of reasonable understanding to express such a preference—elsewhere in the order, the court noted that "Dr. Ling reported and testified that [D.B.] was beginning a pattern of dishonesty and manipulation as a coping mechanism even going so far as to allege misconduct of a parent as a way of retaliating against discipline."  The court did not abuse its discretion in making those findings, as they were supported by evidence in the record.  Further, the trial court's detailed, thirteen-page final order displayed the court's thorough consideration of the enumerated factors. *See Rainey v. Rainey*, 74 Va. App. 359, 380 (2022) (finding that the court's fourteen-page final order "quite thoroughly addressed the factors set out in Code § 20-124.3").

Regarding assignments of error (14), (15), and (16), father does not contend that the circuit court failed to weigh any of the statutory factors, gave significant weight to an improper/irrelevant factor, or committed a clear error of judgment in weighing the factors. Rather, father argues that the circuit court erred for not giving more weight to evidence that *he* presented. Father, however, fails to demonstrate that the court made a clear error in judgment. Further, the court's order makes it clear that it did "consider[] the relevant evidence offered by the parties in the trial of this matter as to each factor." It "weighed the value and credibility of such evidence and arrived at certain conclusions that are compelled by the weight of such evidence." The court also noted that both parties submitted post-hearing written closing arguments, "and the court has reviewed and considered the same."

After doing so, the circuit court specifically ruled that it was in D.B.'s best interest to grant sole legal custody and primary physical custody to mother after considering all of the factors under Code § 20-124.3. "Because the record contains evidence in support of the court's findings, we are precluded from retrying the facts or reweighing the factors." *Armstrong*, 71 Va. App. at 105.

### III. CONCLUSION

For the reasons set forth above, we rule that the circuit court did not err in (1) awarding sole legal custody and primary physical custody of D.B. to mother and (2) entering, without a hearing, an order requiring father to pay all of the GAL fees. Additionally, all requests for attorney fees associated with this appeal are denied.

*Affirmed*.